**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0654-19T2

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

SHAHEED L. BROWN,

     Defendant-Respondent.

_____

Argued December 16, 2019 – Decided January 24, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Indictment Nos. 18-11-0671 and 19-04-0235.

Michael D. Grillo, Assistant Prosecutor, argued the cause for appellant (Angelo J. Onofri, Mercer County Prosecutor, attorney; Michael D. Grillo and Randolph E. Mershon III, Assistant Prosecutor, of counsel and on the brief).

Edward Harrington Heyburn argued the cause for respondent.

PER CURIAM

In this interlocutory appeal arising out of one homicide and one attempted murder prosecution, the State contests the trial court's order denying its motion to disqualify Edward Harrington Heyburn as counsel for defendant Shaheed L. Brown. Heyburn has continuously represented defendant in the subject prosecutions, including appearing as counsel at three trials, at which the juries could not reach a verdict. The State contends that Heyburn is disqualified from continuing to represent his client under Rule of Professional Conduct (RPC) 3.7(a) because he is allegedly a "necessary witness" at trial, and his withdrawal from the case will not create a substantial hardship for defendant. The trial court rejected that contention, and so do we.

I.

A.

In order to give context to the State's application, we briefly review the procedural history that existed at the time of the State's motion. This matter arose from separate indictments charging defendant with crimes associated with the shooting of K.J.[1] on May 25, 2014, and the murder of E.S. on July 12, 2014.[2]

---

[1] We use initials to protect the privacy of the witnesses and the decedent's family.

[2] According to the State, its ballistics reports confirmed the same handgun was used in both shootings.

The first indictment was returned in November 2014 and it charged defendant with the first-degree murder, N.J.S.A. 2C:11-3(a)(1), of E.S. and with three second-degree weapons offenses. These were the charges presented at the three trials at which Heyburn represented defendant, and each time the jury was unable to reach a verdict as to any of the charges. After the third trial, Heyburn filed a motion on defendant's behalf to dismiss that indictment. Before the motion was decided, on November 16, 2018, a Grand Jury returned a superseding indictment, charging defendant and a co-defendant with the first-degree murder of E.S. and weapons offenses. Defendant filed a motion to dismiss the superseding indictment, and the State filed opposition on April 16, 2019. As we understand the record, that motion is still pending.

In the meantime, on January 22 and 28, 2019, defendant was charged by police with new offenses related to the May 25, 2014 shooting of K.J. and tampering with a witness on December 27, 2018. In April 2019, a Grand Jury returned an indictment charging defendant with first-degree attempted murder of K.J., N.J.S.A. 2C:11-3 and 2C:5-1; second-degree aggravated assault under N.J.S.A. 2C:12-1(b)(1); second-degree unlawful possession of a handgun under N.J.S.A. 2C:39-5(b)(1); second-degree possession of a firearm for an unlawful purpose under N.J.S.A. 2C:39-4(a); first-degree tampering with a witness under

A-0654-19T2

N.J.S.A. 2C:28-5(a); and second-degree certain persons not to possess a firearm under N.J.S.A. 2C:39-7.

B.

On June 14, 2019, the State filed its motion to disqualify Heyburn from representing defendant in either of the pending matters. The facts leading to the motion as derived from the motion record are summarized as follows.

The State's contentions about Heyburn relate to his conversation in 2019 with G.V., a witness to the May 25, 2014 shooting of K.J. On April 24, 2019, Heyburn sent a letter to the State providing a copy of a handwritten statement dated January 15, 2019, that he received from G.V. In his statement, G.V. explained he was present when K.J. was shot and, at the time, he could not see the shooter's face because the shooter was wearing a hooded sweatshirt over his face, which could also have been a mask.

G.V.'s statement was consistent with K.J.'s initial report to the police that he made a few days after the shooting in 2014. K.J. told the police that he was sitting on a porch when a male wearing a mask began shooting toward him. However, in January 2019, K.J. positively identified the shooter as defendant in another formal statement taken by police. In his new statement, K.J. explained that he and G.V. were sitting on the porch when defendant noticed him, walked

4

in front of the house, pulled out a gun, and fired at him. K.J. thought defendant was shooting at G.V. and pushed his friend out of the way. It was then that defendant wounded K.J.

Although K.J. did not initially know who shot him, he claimed he recognized defendant's face when he later saw his photo in the newspaper report about the murder of E.S. K.J. explained in 2019 that he did not initially come forward after recognizing defendant as the man who shot him because he did not want to confront the situation. He later did so when he became concerned for his safety after defendant appeared at his place of employment on December 27, 2018, threatened him directly, and otherwise caused others to convey threats on defendant's behalf.

Against this backdrop, and after receiving Heyburn's April 2019 letter with G.V.'s January 15, 2019 statement, detectives met with G.V. and recorded his statements to them. According to G.V., he wrote his statement sometime around February after Heyburn had contacted him. G.V. confirmed that Heyburn had not asked him to write the letter and after the detectives showed him the document, he confirmed it was his and that the January 15, 2019 date was correct. Notably, the date preceded defendant's arrest on charges related to K.J. by seven days.

A-0654-19T2

According to Heyburn, and despite the earlier date on G.V.'s statement, he called G.V. in early February 2019, and after determining that G.V. would not give him or his investigator a statement in person, he asked G.V. to write a statement and send it to him, which G.V. agreed to do. After some time passed without receiving G.V.'s statement, Heyburn made several calls trying to see if G.V. was going to follow through with their earlier conversation. After Heyburn was able to speak to G.V. again, he delivered the statement to Heyburn's office, at Heyburn's request. Heyburn then sent a copy to the prosecutor.

In light of the possibility that defendant would call G.V. at trial, the State decided that it would need to call Heyburn as a witness to rebut G.V.'s testimony. Specifically, the State thought that through Heyburn, it could impeach G.V.'s testimony that the statement was not written at Heyburn's request and that the date of the letter that G.V. confirmed to be accurate was inconsistent with Heyburn's statement that he did not have any contact with G.V. until February 2019, which was after the letter was supposedly written by G.V. For that reason, the State sought Heyburn's disqualification.

On August 28, 2019, the trial court considered oral argument on the State's motion to disqualify Heyburn before denying the motion and placing its reasons on the record that day. The court first determined that in deciding whether

6

Heyburn was a "necessary witness" under RPC 3.7(a), the word "necessary" meant that there was "no other possible way to obtain the same information to which the attorney would be likely to testify." Given that the central issue was the alleged inconsistencies between the date on G.V.'s handwritten letter and Heyburn's statement that G.V.'s statement was provided at a slightly later date, the court found "it would seem more logical to conclude that any inconsistency, if any, would be the result of a dating error on the part of G.V. and not on . . . Heyburn's."

The trial court concluded that Heyburn was not a necessary witness because neither Heyburn nor G.V. made any statements, assertions, or implications suggesting Heyburn had any prior knowledge or input into the drafting of G.V.'s written statement. The court stated there was no suggestion that the statement was "manufactured or even influenced by . . . Heyburn," and "since . . . Heyburn did not create the statement or have any personal knowledge regarding the statement itself or the information provided in it, the necessary witness [was G.V.] not . . . Heyburn." For that reason, the trial court concluded that G.V. and not Heyburn was a necessary witness and Heyburn "would be offered as an impeachment witness for the [S]tate [at] best."

The trial court also found that even if Heyburn was considered a necessary witness, his removal would cause the type of substantial hardship contemplated by RPC 3.7(a)(3). The court observed that because Heyburn was "intimately familiar with" and was "consistently involved in the defendant's initial case" for numerous years, it would present a "substantial hardship on the defendant to recuse . . . Heyburn and require a new attorney to become as intimate and familiar with the details of the case without having been involved from the beginning." Moreover, the court noted that since the State was arguing that both indictments were intertwined, "it would not be possible to recuse . . . Heyburn without causing substantial hardship to . . . defendant in terms of the knowledge and experience that the defense counsel could use for both files."

The trial court concluded that it was "not satisfied that the State . . . met its heavy burden required for a recusal, and that the recusal of . . . Heyburn [was] unnecessary and would work substantial hardship to the defendant . . . ." This appeal followed.

## II.

## A.

A trial court's decision to grant or deny a motion to disqualify an attorney "is made as a matter of law." Twenty-First Century Rail Corp. v. N.J. Transit

Corp., 210 N.J. 264, 274 (2012).  For that reason, the decision is subject to our "de novo plenary review."  Ibid. (citing City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010)).

The United States Constitution's "Sixth Amendment 'commands . . . that the accused be defended by the counsel he believes to be best.'"  State v. Kates, 426 N.J. Super. 32, 43 (App. Div. 2012) (alteration in original) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006)).  The erroneous deprivation of that right as a "structural error" requires reversal because it affects the "framework within which the trial proceeds."  Gonzalez-Lopez, 548 U.S. at 150 (first quoting Sullivan v. Louisiana, 508 U.S. 275, 282 (1993); and then quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)); see also State v. Kates, 216 N.J. 393, 395-96 (2014).  For that reason, it is beyond cavil that a defendant's right to counsel of his or her choosing is a paramount value in our criminal justice system.

A defendant is entitled to have "a fair opportunity" to counsel of his or her choice.  State ex rel. S.G., 175 N.J. 132, 140 (2003).  A defendant is constitutionally entitled to choose which lawyer will represent him or her, so long as that counsel is not court-appointed.  Kates, 426 N.J. Super. at 43.  However, the right to select counsel is not absolute, and can be curtailed by

certain restrictions, including the court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Gonzalez-Lopez, 548 U.S. at 152 (quoting Wheat v. United States, 486 U.S. 153, 160 (1988)).

In a motion to disqualify counsel, the moving party bears the burden of proving that disqualification is appropriate. Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 221-22 (1988). "[D]isqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1114 (D.N.J. 1993) (quoting Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)); see also Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 572 (App. Div. 2000) (stating that the disqualification of an attorney selected by a client "is a harsh discretionary remedy which must be used sparingly."). Importantly, "a defendant's 'choice of counsel is not to be dealt with lightly or arbitrarily. That choice should not be interfered with in cases where [the reasons for disqualification] are highly speculative.'" United States v. Lacerda, 929 F. Supp. 2d 349, 360 (D.N.J. 2013) (quoting United States v. Flanagan, 679 F.2d 1072, 1076 (3d Cir. 1982)).

B.

With those guiding principles in mind, we turn to the State's contention that it met its burden to establish Heyburn was a necessary witness under RPC 3.7(a) because "the unresolved timeline of the communication between [G.V.] and . . . Heyburn, and the discrepancy surrounding when and how the statement was created, rather than the content of the statement" required his testimony. Significant to the State's argument is that if G.V. is to be believed, as compared to Heyburn, defense counsel spoke to G.V. weeks before G.V. wrote the note that is dated seven days before J.K. even gave his statement to police identifying defendant as his shooter and prior to defendant's arrest later that day. The State argues that Heyburn's testimony may be used to prove G.V.'s statement was fabricated and additionally, to prove that Heyburn's testimony is "an attempt to alter the date on which [G.V.] wrote his statement." In order to prove G.V.'s statement was fabricated, the State argues it "must call . . . Heyburn to fully develop the contradictory versions of the communication between [G.V.] and . . . Heyburn." We disagree.

RPC 3.7 provides, in pertinent part, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . disqualification of the lawyer would work substantial hardship on the

11

client." "The ethical prohibition is not against being a witness, but against acting as trial attorney in a case where it is likely that the attorney's testimony will be necessary." State v. Tanksley, 245 N.J. Super. 390, 393 (App. Div. 1991). Importantly, the rule does not require certainty that a lawyer will testify, only "a likelihood that a lawyer will be a necessary witness." J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 230 (App. Div. 2006). RPC 3.7 is meant to protect the client's interest to make sure that all evidence to advance his or her position is available and used in a trial to further a just result. See Freeman v. Vicchiarelli, 827 F. Supp. 300, 306 (D.N.J. 1993).

Although RPC 3.7 does not require certainty that an attorney will testify to warrant disqualification, the requisite "likelihood" must be that the attorney will be a "necessary witness," i.e., that the attorney can provide evidence that is not available through other means. J.G. Ries & Sons, Inc., 384 N.J. Super. at 230 (mere representation that the adversary will call an attorney as a witness "does not satisfy the threshold requirements of RPC 3.7, which specifies a likelihood that a lawyer will be a necessary witness."). Testimony is considered "necessary" if concealing it would prejudice the client or prevent the court from making a just decision. State v. Dayton, 292 N.J. Super. 76, 86 (App. Div. 1996).

12

Applying these definitions, we agree with the trial court that Heyburn is not a necessary witness. There is nothing presented by the State to establish that Heyburn will contradict G.V.'s statement that the assailant was wearing a mask, and there is nothing to prevent it from cross examining G.V. about inconsistencies that are not disputed about the date or questioning whether it was prepared at Heyburn's request. Moreover, the State has not established that Heyburn was involved with the drafting of G.V.'s statement or suggesting what it should say.

Even if Heyburn is a necessary witness, we agree with the trial court that weighing the prejudice of the State's possible need for Heyburn to testify about G.V.'s statement's date or whether it was prepared at Heyburn's request do not outweigh the substantial prejudice defendant will experience if Heyburn is removed as his attorney. Whether an attorney's disqualification constitutes a substantial hardship to his or her client depends, among other things, on the amount of time and money invested by the client in his counsel, and the proximity to trial. See Freeman, 827 F. Supp. at 304-05; see also Dewey, 109 N.J. at 218-19 (denying a motion to disqualify under RPC 1.7 and 1.9 because counsel had expended over 1800 hours in case preparation and the proximity of

13

trial rendered it too difficult for a new attorney to familiarize themselves with the matter).

Here, it is undisputed that Heyburn has been representing defendant for five years through three trials and numerous motions without charging defendant for his services. Although there is no trial date set for this matter, the intricacies of the indictments necessitate permitting Heyburn to remain as defendant's counsel. The State's contention that the lack of a trial date would provide defendant with ample opportunity to obtain a new counselor or to have a public defender appointed fails to acknowledge the length of time Heyburn has been representing defendant, the associated time that he has invested into defendant's matters, his knowledge of the cases, and defendant's logical choice to have Heyburn continue to represent him. We see no equitable reason to deprive defendant of his trial attorney at this late juncture. See RPC 3.7(a)(3).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0654-19T2